UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| LORI FRANCHINA, <br>     Plaintiff, <br><br> v. <br><br> CITY OF PROVIDENCE, <br>     Defendant. | C.A. No. 21-342-JJM-LDA |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Plaintiff Lori Franchina sued the City of Providence ("City") for discrimination under the Americans with Disabilities Act ("ADA"), Title VII, and the Rhode Island Fair Employment Practices Act ("FEPA") based on the City's refusal to reopen her 2011 claim for accidental disability retirement benefits. ECF No. 14. The City asserts that Ms. Franchina has not met her burden to show unlawful discrimination and moves for summary judgment in its favor. ECF No. 41.

The Court GRANTS the City's motion on all counts alleging disparate treatment but DENIES it as to Counts II and IV (retaliation only) because Ms. Franchina has provided facts to show pretext for gender-based retaliation.

I.    **BACKGROUND**

    A.    **2011 Application**

Ms. Franchina applied for accidental disability retirement benefits with the Employees' Retirement System of the City of Providence ("Board") in 2011 based on

workplace harassment in her line of work as a firefighter. The original injury report, filed in 2009, described a grisly incident where a coworker responding to a gunshot victim "snapped [his] glove" near Ms. Franchina resulting in a "large amount of fluid [striking her] mouth, eyes, and nose." ECF No. 45-2 at 2 ("the Job Street incident"). The report did not specify whether this was intentional, but her physician, Dr. Curran, emphasized that the trauma was exacerbated by "the lack of cooperation from the engine company, their failure to follow Lt. Franchina's orders, their delay in helping a critical patient, and lastly their physical intimidation," which combined to make "a bad situation into a horrendous situation." ECF No. 45-1 at 3.

Dr. Curran diagnosed Ms. Franchina with post-traumatic stress disorder ("PTSD"), and she was placed on leave. Co-workers orally harassed her when she returned to work. *Id.* An incident report filed in 2010 described "[a]cute [s]tress" caused by "[r]epeated workplace lateral violence and no actions taken to assist with current workplace harassment." ECF No. 45-2 at 13-14. Ms. Franchina's application included detailed treatment records to this effect. ECF No. 45-4. Dr. Curran concluded that her PTSD was the "natural and approximate result of an accident in the performance of the applicant's duties."[1] ECF 45-1 at 3.

The Board denied Ms. Franchina's application after three medical experts concluded that workplace harassment had not caused her injuries. ECF No. 45-3. The Board's letter omitted any reference to the additional harassment and limited its

---

[1] Ms. Franchina stated in her cover letter that she suffered from "PTSD as a result of [an] accident at 43 Job Street," but she described workplace harassment at length in the supporting materials. ECF No. 41-2; ECF Nos. 45-1-4.

2

review to the Job Street incident, stating that her PTSD "was not the result of a work related accident" and did not arise out of an "extraordinary [incident] beyond that which would normally be faced by a [firefighter] in the course of their duties." ECF No. 41-3. Ms. Franchina was involuntarily retired in 2013 with ordinary benefits.[2] ECF No. 41-4.

### B. 2019 Motion for Reconsideration and Denial

Three years later, Ms. Franchina won a substantial verdict when a jury found that she suffered from PTSD based on sexual harassment in the workplace. The First Circuit upheld the verdict and referred to the Job Street incident as a "particularly horrifying incident" in a long string of egregious violations. *Franchina v. City of Providence*, 881 F.3d 32, 37 (1st Cir. 2018). Two physicians testified at trial that workplace harassment caused her PTSD.

Armed with record testimony from these physicians, Ms. Franchina asked the Board to reopen her application for "good cause." ECF No 41-5 at 20. The Board declined, stating that the issue had been "litigated to conclusion." ECF No. 51 at 4. On appeal, the Board said it had no legal authority and argued that reopening the application would be "an exercise in administrative overreach." ECF No. 45-6 at 4-6.

---

[2] Ordinary benefits—unlike accidental benefits, which are paid at a higher rate—require no showing that the workplace caused the injury. *Prew v. Emp. Ret. Sys. of City of Providence*, 139 A.3d 556, 563 (R.I. 2016).

3

Ms. Franchina then filed this lawsuit alleging the denial was retaliatory and motivated by discriminatory animus.[3] The Board again claimed lack of authority—but in discovery, four members of the Board testified that they did in fact have authority to reopen. The Board now concedes that it had authority but says it denied her motion based on lack of "new medical evidence." ECF No. 41-1 at 13-17.

Ms. Franchina argues the Board has changed its story one too many times, and that its shifting rationale raises an inference of discriminatory pretext. ECF No. 45 at 9. She says the Board has a history of retaliation and discrimination, pointing to Danielle Masse, a firefighter who testified at Ms. Franchina's trial and was allegedly also denied benefits. *Id.* at 3 n.2. She says her application was "so grossly mismanaged that [the denial] can only be the product of intentional harassment, discrimination, and retaliation." *Id.* at 7.

## II. STANDARD OF REVIEW

The purpose of summary judgment is to "pierce the boilerplate of the pleadings." *Quinn v. City of Bos.*, 325 F.3d 18, 28 (1st Cir. 2003). Taking the evidence in the light most favorable to the nonmoving party, the Court must grant summary judgment if the moving party can show there is "no genuine dispute as to any material fact," and they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A dispute is "genuine" if "a reasonable jury could resolve the point in favor of the nonmoving party . . . ." *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748

---

[3] This action is only for damages based on claims for gender and disability discrimination. The Court has no power to order the Board to reopen her application, nor has Ms. Franchina requested this relief.

4

(1st Cir. 1994) (citation and quotation marks omitted). A fact is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Summary judgment is a "drastic remedy" because it deprives the parties of their Seventh Amendment right to have their case tried by a jury. *Colman v. Faucher*, 128 F. Supp. 3d 487, 490 (D.R.I. 2015). It also serves as an important check on the parties: the nonmovant may not rely on "conclusory allegations, improbable inferences, acrimonious invective, or rank speculation," but must produce "specific facts" to support their claims. *Theidon v. Harvard Univ.*, 948 F.3d 477, 494 (1st Cir. 2020) (citations and internal quotation marks omitted).

## III. DISCUSSION

Ms. Franchina has three claims: an ADA disability claim alleging that the Board treats psychological injuries differently from physical injuries; a Title VII gender discrimination claim alleging disparate treatment; and a Title VII retaliation claim based on her 2012 lawsuit.[4] ECF No. 14. Because her evidence is circumstantial, the Court applies the three-part analysis under *McDonnell Douglas*

---

[4] The FEPA claims are similar to the gender and disability claims under Title VII and the ADA, so the Court will consider them together. *DeCamp v. Dollar Tree Stores, Inc.*, 875 A.2d 13, 21-25 (R.I. 2005). The Court previously dismissed Count V, which alleged violations of the Lilly Ledbetter Fair Pay Act.

5

*Corp. v. Green*, 411 U.S. 792, 802-6 (1973).[5] At step one, the plaintiff bears the burden to establish a prima facie case of discrimination. *Id.* At step two, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the decision. *Id.* At step three, the burden shifts back to the plaintiff to show pretext for discrimination.[6] *Id.*

Ms. Franchina must do more than impugn the employer's veracity to prove pretext; she must offer "specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real and unlawful motive of discrimination." *Theidon*, 948 F.3d at 497 (citation and quotation marks omitted). She can show pretext through "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons." *Alston v. Town of Brookline*, 997 F.3d 23, 46 (1st Cir. 2021) (citing *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998)). She can also show that the reason is so "unworthy of credence" as to suggest animus. *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). If the plaintiff has established a prima facie case and raised "a suspicion of mendacity," the

---

[5] The Board's treatment of the lawsuit is a relevant piece of circumstantial evidence. It is not direct evidence of discrimination, as Ms. Franchina argues, because she herself cited the lawsuit in her bid to reopen the application.

[6] *McDonnell Douglas* applies to Ms. Franchina's claims under the ADA, Title VII, and FEPA. *Colon v. Tracey*, 717 F.3d 43, 49 (1st Cir. 2013); *Tobin v. Liberty Mut. Ins.*, 433 F.3d 100, 104 (1st Cir. 2005); *DeCamp*, 875 A.2d at 21-25.

factfinder is permitted—but not required—to infer a discriminatory motive.[7] *Reeves*, 530 U.S. at 147 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502-511 (1993)).

## A.  Counts I and III: Disability Discrimination

Ms. Franchina argues the Board discriminated against her by improperly denying benefits because she was diagnosed with PTSD. The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Since this is a benefits case, Ms. Franchina must show that she was "a member of a protected group, was eligible to receive a benefit, was denied a benefit, and non-protected group members received the benefit."[8] *Ramos v. Baxter Healthcare Corp. of Puerto Rico, Inc.*, 256 F. Supp. 2d 127, 134 (D.P.R. 2003), *aff'd sub nom. Candelario*

---

[7] The Supreme Court has emphasized that this inquiry is typically reserved for the jury, in line with "the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" *Reeves*, 530 U.S. at 147 (citation omitted). A plaintiff may show pretext but fail to show motive as a matter of law if pretext is weak and there is "abundant and uncontroverted independent evidence that no discrimination had occurred," or if the employer offers a pretextual (but nondiscriminatory) motive. *Id.* at 148; *see, e.g., Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 10 (1st Cir. 2000) (affirming summary judgment based on "thin" evidence of pretext). But the First Circuit has cautioned that courts "should be especially cautious before granting summary judgment when pretext and retaliatory animus are at issue." *Harrington v. Aggregate Indus. Ne. Region, Inc.*, 668 F.3d 25, 33 (1st Cir. 2012). When the evidence is strong, pretext alone may be enough to get to a jury. *Reeves*, 530 U.S. at 148-49; *Forsythe v. Wayfair Inc.*, 27 F.4th 67, 80-81 (1st Cir. 2022).

[8] Normally a plaintiff must show that she was disabled, could do her job with or without a reasonable accommodation, and that the adverse action was based "in whole or in part" on her disability. *Tobin v. Liberty Mut. Ins.*, 433 F.3d 100, 104 (1st Cir. 2005). However, the prima facie case is a flexible standard that may be adapted to the conduct at issue. *McDonnell Douglas*, 411 U.S. at 802 n.13.

*Ramos v. Baxter Healthcare Corp. Of Puerto Rico, Inc.*, 360 F.3d 53 (1st Cir. 2004) (citation omitted) (analyzing benefits discrimination under Title VII).

Ms. Franchina meets the first three prongs: she had a disability (PTSD) and was denied the opportunity to reopen her claim. Taking the Board's reasoning at face value—that she needed "new medical evidence"—she was eligible. She came prepared with trial testimony from two medical experts who testified that workplace harassment caused her PTSD. As evidence of disparate treatment based on disability, she points to a police officer (Mary Day) who suffered a physical injury and was allowed to reopen her application for accidental disability benefits.

Ms. Franchina's claim falters because Ms. Day is not an appropriate comparator. Whether evaluated at step one or step three (*see Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 19 (1st Cir. 1999)), their cases are not similar. Ms. Day sought a waiver from the Providence City Council to file her original application outside the 18-month window authorized by statute. ECF No. 41-13. By contrast, the Board heard and denied Ms. Franchina's application on the merits. She sought to reopen it—a scenario not contemplated by the ordinance relied on by Ms. Day—and was denied again based on lack of "new medical evidence." This is not an "apples to apples" comparison. *Conward*, 171 F.3d at 20 (citation omitted).

Furthermore, Ms. Franchina has not provided facts to suggest the Board's action was motivated by her PTSD. Although one of the medical experts did at first contest her PTSD diagnosis, the Board denied her original application based on lack of causation—not because it failed to accept the diagnosis as a qualifying injury. The

8

Board granted Ms. Franchina ordinary disability benefits in 2013 based on depression and anxiety, which further undercuts her claim that psychological injury was the reason for denial. ECF No. 41-4; ECF No. 46 at 5. No reasonable jury could find, given these facts, that she was denied because of PTSD.

Thus, the Court GRANTS Defendant's Motion for Summary Judgment on Counts I and III. ECF No. 41.

### B.   Counts II and IV: Gender Discrimination

The gravamen of Ms. Franchina's Title VII complaint is that the Board disregarded extensive evidence of sexual harassment submitted with her 2011 application, and then refused to consider new causation evidence after she presented it at trial. The Board's continued intransigence can only be explained, she argues, by sex-based discrimination or a desire to retaliate.

#### 1.   Disparate Treatment

Ms. Franchina first argued that the Board treated her differently from male colleagues, who on "information and belief" are routinely granted benefits. ECF No. 14 at 9. She now argues she was denied because of her sexual orientation, again referencing Ms. Day, a heterosexual applicant.[9] ECF No. 45 at 13. The City says Ms. Franchina was denied because she did not provide "new medical evidence" that the Job Street incident caused her injury. ECF No. 41-1 at 26-27.

---

[9] Both the First Circuit and the Supreme Court have independently held that discrimination based on sexual orientation is actionable as a form of sex discrimination under Title VII. *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 660 (2020); *Franchina v. City of Providence*, 881 F.3d 32, 52-54 (1st Cir. 2018).

As above, Ms. Franchina has failed to provide valid comparators or evidence suggesting that gender or sexual orientation discriminatory animus motivated the Board's decision. Only two people have ever petitioned to have their claims reopened: Ms. Franchina and Ms. Day (both women). And because Ms. Franchina has not offered evidence about Ms. Day's sexual orientation, it is impossible to evaluate this claim. Ms. Day's case is also distinguishable for the reasons given above.

"Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors [including] the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence . . . that may properly be considered on a motion for judgment as a matter of law." *Reeves*, 530 U.S. at 148-49. Here, the prima facie case is weak, and Ms. Franchina has put forward no evidence to show that the Board treated her differently because of her gender or sexual orientation. *Celotex Corp.*, 477 U.S. at 322 (judgment is warranted when a plaintiff fails to support an essential element of her claim). As a result, this claim fails as a matter of law.

### 2. Retaliation

This leaves retaliation, the issue at the heart of Ms. Franchina's complaint. Title VII makes it illegal for an employer to discriminate against an employee because she "made a charge, testified, assisted, or participated in any manner in [a Title VII] investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). The prima facie case requires her to show that she (1) "engaged in protected activity under Title VII"; (2) suffered an adverse employment action; and (3) the action was "causally connected to

the protected activity." *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 46 (1st Cir. 2010).[10] "But-for" causation is required to meet the "causally connected" element. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

A plaintiff who establishes pretext has also established "but-for" causation, so the Court begins with step three. *Soto-Feliciano v. Villa Cofresi Hotels, Inc.*, 779 F.3d 19, 32 (1st Cir. 2015). Pretext may be shown based on "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions," or where the reason is simply "unworthy of credence." *Hodgens*, 144 F.3d at 168; *Reeves*, 530 U.S. at 143. When the plaintiff has a strong prima facie case paired with evidence of mendacity, the case may go to a jury on pretext alone. *St. Mary's Honor Ctr.*, 509 U.S. at 511.

On these facts, a reasonable jury could find the Board's stated reason—lack of "new medical evidence"—was a lie motivated by a desire to retaliate. From the beginning of this case, the Board's reasoning has been a moving target. The City's leading argument before the Rhode Island Supreme Court was that the Board had no legal authority to reopen the application:

> Neither the Providence Code of Ordinances nor the [Home Rule Charter] empowers the [Board] to "re-open" any matter previously decided by the Board. If the Board had done so, it would have been an exercise in administrative overreach—pushing its power from administrative to legislative—which is improper. *See generally* HRC § 104 ("All powers

---

[10] Ms. Franchina has a strong prima facie case: she filed a Title VII lawsuit, won it, and was denied. Her application included testimony under oath from two medical experts, Dr. Yanni and Dr. Olsen, who stated that her PTSD was caused by "the treatment she received within the fire department." ECF No. 41-7 at 3; ECF No. 41-10. By its own admission, the Board had authority to reopen based on "new medical evidence" but refused to do so, stating that "[t]he only evidence that was put to us was the court case." ECF No. 41-9 at 4. A reasonable jury could find that but for the lawsuit, her evidence would have been considered.

> of the city shall be exercised in the manner prescribed by this Charter or, if not so prescribed, then in such manner as shall be provided by ordinance or resolution of the city council.").

ECF No. 45-6 at 5. This forceful argument was directly contradicted by four City witnesses who testified the Board had authority to reopen the application based on "new medical evidence."[11] No reasonable jury could credit the Board's current position—that it had legal authority to reopen but declined to do so based on the facts—given its previous statements to the contrary.

The Board's reasoning has also shifted over time. The Board first told Ms. Franchina the matter had been "litigated to conclusion." ECF No. 51. Before the Rhode Island Supreme Court, the Board argued that it would be "improper" to reopen under the governing law. ECF No. 45-6. Now the Board argues that Ms. Franchina needed "new medical evidence." While not strictly contradictory, a jury could draw a negative inference from these inconsistencies and find the Board's current reasoning to be less persuasive on that basis. *Hodgens*, 144 F.3d at 168.

Given the Board's evident confusion over its own procedures (including internal disputes over who had the authority to reopen and when new medical evidence could be introduced), a reasonable jury could also find the Board had no standard procedures, and that its stated process was either a ruse or a post-hoc rationalization intended to frustrate Ms. Franchina's efforts to reopen her case.

---

[11] The lawyer is an agent for the client, so this contradiction may be fairly imputed to the Board. *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962).

There were no written standards, and the parties dispute whether the Board ever told Ms. Franchina that she needed to provide "new medical evidence."[12]

Finally, the parties dispute the factual basis for the original denial. The Board said in its 2011 denial that "[t]he Application for Accidental Disability Retirement is based upon Post Traumatic Stress Disorder (P.T.S.D.) resulting from a traumatic event on July 29, 2009." ECF No. 41-3 at 2. The 2020 denial says the same:

> Franchina's Application for Accidental Disability Retirement (the "Application") was predicated [upon] Post Traumatic Stress Disorder (P.T.S.D.) resulting from an alleged incident that occurred on July 29, 2009. After responding to a call a crewmember, while taking his gloves off, splashed bodily fluids on Franchina's face, near her eye and mouth—exposing her to a patient's bodily fluids.

ECF No. 51. But Ms. Franchina points out that her 2011 application was not based on the Job Street incident alone; rather, she connected this incident to a pattern of harassing conduct. ECF No. 46 at 1-3. Her original application included:

- A statement by Dr. Curran that the Job Street incident alone was *not* the sole cause of her injury, and that verbal harassment and physical intimidation "made a bad situation into a horrendous situation." ECF No. 45-1 at 3-4.

- An incident report from 2010 showing that *in addition to* the Job Street incident, Ms. Franchina reported "[r]epeated exposure to lateral violence/workplace harassment and Acute Stress." ECF No. 45-2 at 13.

---

[12] Importantly, the Board did not give this reason in its denial letter, stating only that the matter had been "litigated to conclusion." ECF No. 51.

13

- Evaluations by three medical experts acknowledging Ms. Franchina's reports of harassment. ECF No. 45-3 at 1-14.
- Treatment records detailing the same. ECF No. 45-4 at 1-4.[13]

Taking the facts in the light most favorable to Ms. Franchina, a reasonable jury could find that the Board misrepresented her application materials in its original findings, raising an inference of mendacity. This does not go directly to the Board's current reasoning—it has nothing to do with "new medical evidence"—but it is material to pretext because the Board relied on these findings in its 2020 denial. ECF No. 51.

The Board's inexplicable refusal to credit Ms. Franchina's original allegations, its continued defense of its original reasoning, and its shifting and contradictory explanations all combine to raise a strong inference of pretext. *Hodgens*, 144 F.3d at 168; *Reeves*, 530 U.S. at 143. Viewing this evidence as a whole, and in the light most favorable to the nonmovant, the Court finds that Ms. Franchina has raised a genuine issue of material fact as to whether the Board's reasoning was a lie motivated by retaliatory animus. *Theidon*, 948 F.3d at 496 n.29. Given the strength of her prima facie case, a jury is entitled to infer discriminatory motive.[14]

The Court thus DENIES summary judgment for retaliation under Counts II and IV. ECF No. 41.

---

[13] This evidence flatly contradicts the City's position that Ms. Franchina originally applied based on "a single incident that occurred on Job Street in the City of Providence in 2009" and that she "did not apply . . . based on the plethora of harassing and hostile situations the jury determined she faced on the job that became the basis of her successful 2012 lawsuit." ECF No. 41-1 at 5.

[14] The Court declines to consider the *Masse* complaint at summary judgment, finding that Ms. Franchina ably made her case based on other evidence.

## IV. CONCLUSION

For the reasons given above, the Court GRANTS summary judgment as to Counts I and III (disparate treatment based on disability) and Counts II and IV (disparate treatment based on gender). The Court DENIES summary judgment as to Counts II and IV for the retaliation claims only. ECF No. 41.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

August 1, 2024